**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION**

TOMMY JACKSON, :
:
    Plaintiff, :
:
v. : Case No. 1:11-CV-067 (WLS)
:
COOPER LIGHTING, LLC, :
:
    Defendant. :
:

## ORDER

Currently pending before the Court is Defendant's Motion to Enforce Settlement Agreement and Motion for Sanctions (Doc. 32). On January 28, 2013, the Court heard arguments from the respective sides regarding these motions. At the hearing, the Court also heard from Plaintiff and his counsel regarding Plaintiff's counsel's Motion to Withdraw. (Doc. 47.) The Court gave Plaintiff until February 11, 2013, to obtain new counsel. By letter dated February 27, 2013, Plaintiff informed the Court that he was unable to find counsel. (Doc. 39.) Plaintiff stated that a potential attorney informed him that it would be hard to vacate the settlement in light of what was said in his deposition.[1] (*Id.*) Plaintiff then requested that the Court, in its discretion, make a decision on Defendant's Motion to Enforce Settlement Agreement. (*Id.*) Accordingly, the Court finds that Defendant's Motion to Enforce Settlement Agreement and Motion for Sanctions are ripe for review.

---

[1] In his deposition, Plaintiff stated that he did not believe race was a factor in Defendant's decision not to promote him. (Dep. of Tommy Jackson, 122:1-123:18.)

1

### A. Motion to Enforce Settlement

Under Georgia law, a Court's review of a motion to enforce a settlement agreement is similar to the analysis that a Court undertakes in reviewing a motion for summary judgment. *Cohen v. Dekalb Cnty. Sch. Dist.*, No. 1:09-cv-1153, 2009 WL 4261161, at *4 (N.D. Ga. Nov. 25, 2009) (citing *Ballard v. Williams*, 223 Ga. App. 1, 1 (1996)). Thus, applying state contract law, the Court determines whether the movant has shown "that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of the plaintiff's case." *Ballard*, 223 Ga. App. at 1 (citations omitted). Just as it does during summary judgment, the Court "must draw all disputed factual inferences in the light most favorable to the non-moving party." *Cohen*, 2009 WL 4261161 at *4.

Based on the representations of the parties, the Court finds that Defendant's Motion should be granted. Here, the record reflects that the oral agreement of the parties—to settle Plaintiff's case in exchange for $500—was memorialized on the record in Plaintiff's presence. (*See* Doc. 32 at 2.) Specifically, counsel for Defendant stated on the record that "the counsel have reached an agreement to resolve this matter. The terms are a payment of $500 to Erika Goodman in exchange for Mr. Jackson's execution of a Standard Confidential Settlement and Release Agreement, which includes a dismissal with prejudice of the pending lawsuit." (*Id.*) In response, Ms. Goodman stated "each side will bear their own fees and costs and that the $500 being paid for the cost of the litigation." (*Id.* at 2-3.)

One of the cornerstones of Georgia law on settlement agreements is the fact that "an attorney of record has apparent authority to enter into an agreement on behalf of his client and the agreement is enforceable against the client by other settling parties."

*Brumbelow v. Northern Propane Gas Co.*, 251 Ga. 674, 674 (1983). This authority emanates from the contract between the attorney and his client, and, in the absence of express restrictions on this authority, the authority may be considered plenary by the Court and opposing parties. *Id.* Therefore, "an attorney's consent to the agreement is binding on his client." *Wong v. Bailey*, 752 F.2d 619, 621 (11th Cir. 1985) (citing *Stone Mountain Confederate Monumental Assoc. v. Smith*, 170 Ga. 515, 521 (1930)).

Here, Plaintiff does not dispute that Ms. Goodman consented to the settlement in his presence; rather he argues that it was his understanding that Ms. Goodman was merely entering into a separate, nonbinding settlement agreement to satisfy her fees, and that he would be free to continue pursuing his case with a separate attorney. However, Plaintiff's interpretation of the terms of the settlement agreement is inconsistent with written record of the agreement. In Plaintiff's presence, Ms. Goodman consented to the terms of the settlement agreement. There is no evidence that Plaintiff verbally expressed his desire to reserve his right to continue the litigation, notwithstanding this agreement. In fact, the record reflects that Plaintiff said nothing as Ms. Goodman and Ms. Borna confirmed the oral agreement. Further, there is no evidence to reflect that anyone in the room had any reason to believe that Ms. Goodman was not acting on Plaintiff's behalf when she accepted the settlement terms.

Plaintiff's subjective understanding of the settlement agreement, not divulged to anyone else, is simply insufficient to find that an enforceable agreement does not exist. Importantly, the record is devoid of any evidence demonstrating a lack of assent on Plaintiff's part. Under Georgia law, the enforcement of a settlement agreement requires that the agreement "meet the same requisites of formation and enforceability as any other contract." *Wong*, 752 F.2d at 621 (citing *McKie v. McKie*, 213 Ga. 582, 583

(1957)). Accordingly, the Court must determine whether there was a meeting of the minds as to the terms of the contract. *Id.* (citing O.C.G.A. § 13-3-2). "Assent to the terms of an agreement can be implied from the circumstances, and conduct inconsistent with a refusal of the terms raises a presumption of assent upon which the other party can rely." *Id.* (citing *Smith v. Hornbuckle*, 140 Ga. App. 871, 875 (1977)). Aside from Plaintiff's representations to the Court regarding his belief that the settlement agreement would have no binding effect as to him, there is no other evidence of his refusal to assent to the settlement terms regarding his claim. The record reflects that both Ms. Goodman and Ms. Borna believed that they had Plaintiff's assent to the agreement when they confirmed the settlement agreement's terms. (*See* Doc. 32 at 2.) Thus, the Court does not find an absence of a meeting of the minds.

Finally, the fact that Plaintiff did not sign the agreement does not change the Court's finding that the parties reached an agreement to settle. The oral agreement between the parties, in Plaintiff's presence, is sufficient for finding there existed an agreement. *Poulous v. Home Fed. Sav. & Loan Ass'n*, 192 Ga. App. 501, 502 (1989) ("That the settlement agreement was oral rather than written has no bearing on its enforceability. Under Georgia law, (a) definite, certain and unambiguous oral contract of settlement of a pending cause of action is a valid and binding agreement.") (additional citations and quotations omitted); *Clough Marketing Servs., Inc. v. Main Line Corp.*, 313 F. App'x 208, 211 (11th Cir. 2008) ("The later drafting of [a] written settlement agreement 'may have been a condition of the performance but it was not an act necessary' for the parties to reach an agreement to settle.") (quoting *Pourreza v. Teel Appraisals & Advisory, Inc.*, 273 Ga. App. 880, 883 (2005)).

For the aforementioned reasons, Defendant's Motion to Enforce Settlement Agreement is **GRANTED**.

### B. Motion for Sanctions

Defendant has moved for sanctions pursuant to 28 U.S.C. § 1927 and the Court's inherent powers. The Eleventh Circuit has observed that a district court's authority to issue sanctions for attorney misconduct under § 1927 is "either broader than or equally as broad as the district court's authority to issue a sanctions order under its inherent powers." *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239 (11th Cir. 2007). Thus, the Court will first address whether Defendant is entitled to sanctions, as against Plaintiff's counsel, under § 1927. If sanctions are not warranted under Section 1927, they are not permissible under the Court's inherent powers "because the court's inherent power to issue sanctions for vexatious conduct by attorneys does not reach further than § 1927." *See id.*

#### 1. *Ms. Goodman*

Under § 1927, a Court is empowered to award costs and fees against "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any unreasonably and vexatiously . . . ." The Eleventh Circuit "ha[s] long held that the provisions of § 1927, being penal in nature, must be strictly construed." *Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1281 (11th Cir. 2010) (additional citations and quotations omitted). In order to justify an imposition of sanctions, the plain language of section 1927 sets forth three requirements that must be met:

1) an attorney must engage in unreasonable and vexatious conduct;

> 2) such 'unreasonable and vexatious' conduct must multiply the proceedings; and
>
> 3) the amount of the sanction cannot exceed the costs occasioned by the objectionable conduct.

*Id.*

Bad faith is an indispensable element to the imposition of sanctions under Section 1927. *Schwartz v. Million Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003) ("'Bad faith' is the touchstone. Section 1927 is not about mere negligence.") To that end, "an attorney multiples proceedings 'unreasonably and vexatiously' within the meaning of the statute *only* when the attorney's conduct is so egregious that it is 'tantamount to bad faith.'" *Amlong*, 500 F.3d at 1239 (emphasis added). To assess bad faith, the Court looks at the attorney's objective conduct. *Id.* at 1239-40 ("The term "unreasonably" necessarily connotes that the district court must compare the attorney's conduct against the conduct of a "reasonable" attorney and make a judgment about whether the conduct was acceptable according to some objective standard. The term "vexatiously" similarly requires an evaluation of the attorney's objective conduct.") Reckless conduct can warrant sanctions even in the absence of "purpose or intent to multiply proceedings." *Id.* at 1241. The same does not hold true for negligent conduct, which, standing alone, does not support an award of sanctions under § 1927. *Id.* Finally, in order to satisfy the multiplication-of-proceedings element, the attorney must have engaged in conduct that leads to proceedings that would not have been conducted otherwise. *Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997).

Here, Defendant requests that the Court sanction Plaintiff's counsel for the costs Defendant incurred in filing its sanctions motion.[2] (Doc. 32 at 11.) The facts are as follows. On or about May 11, 2012, Ms. Goodman's office received a draft of the Settlement Agreement in PDF format. (Doc. 35 ¶ 1.) On May 21, 2012, Ms. Goodman requested a copy of the agreement in Word format for editing purposes. (*Id.* ¶ 2.) A Word version of the agreement was sent to Ms. Goodman the following day. (*Id.* ¶ 3.) Ms. Goodman admits that she cannot recall when she actually saw the email containing the Word version. (*Id.* ¶ 4.) Defendant contacted Ms. Goodman's office twice in July to inquire about the status of the agreement; the calls yielded no further information about the agreement.

Ms. Goodman states that she mistakenly believed that the release had been finalized and forwarded to Plaintiff for his signature. (*Id.* ¶ 9.) Ms. Goodman states that she did not realize the error until she received an email from Ms. Borna, dated November 9, 2012. (*Id.*) Ms. Goodman states that she then responded to the email, providing Ms. Borna with a modified Settlement Agreement in redline format on November 12, 2012. (*Id.*) The finalized draft of the agreement was forwarded to Plaintiff on November 13, 2012. (*Id.* ¶ 10.) A second copy of the release was forward to Plaintiff on November 28, 2012. (*Id.*) On or about the second week of December 2012, Plaintiff advised Ms. Goodman that he did not intend to execute the settlement agreement. (*Id.*)

On these facts, the Court does not find that § 1927 sanctions are warranted. It is clear that the failure to promptly transmit the settlement agreement to Plaintiff was the

---

[2] Defendant estimates that it has expended $7,128 in fees through its six-month effort to obtain a signed version of the settlement agreement. (Doc. 32 at 11 n.4.)

result of an inadvertent mistake on the part of Ms. Goodman and her office. While the Court understands Defendant's frustration about the breakdown in settlement, the law is clear that "merely unintended, inadvertent, and negligent acts will not support the imposition of sanctions under § 1927." *Jerelds v. City of Orlando*, 194 F. Supp. 2d 1305, 1312 (M.D. Fla. 2002) (citing cases). "Rather, the power to impose sanctions under § 1927 should be exercised only in instances of a serious and studied disregard for the orderly processes of justice." (*Id.*) So while, yes, Ms. Goodman could have remained more vigilant about the status of the settlement, her failure to do so, however, does not by itself give rise to sanctions under § 1927. *See, e.g., Fox v. Palm Coast Plaza, Inc.*, No. 09-80097, 2010 WL 472909, at *3 (S.D. Fla. Feb. 5, 2010) (noting that while plaintiff's counsel could have "move[d] more quickly to resolve th[e] litigation," counsel's conduct did not rise to the level of bad faith). That Plaintiff might have signed the agreement had Ms. Goodman forwarded the agreement earlier does not change the Court's conclusion. Defendant's belief to this effect amounts to nothing more than mere conjecture, and the Court will not use such conjecture to penalize Ms. Goodman, especially in light of Plaintiff's representation that he never thought that the settlement agreement was intended to dispose of his claims.

As to the three cases cited by Defendant for the proposition that Ms. Goodman's conduct is sanctionable, the Court finds these cases to be highly distinguishable. In *Forman v. Mt. Sinai Med. Ctr.*, 128 F.R.D. 591, 605-606 (S.D.N.Y. 1989), the Court imposed sanctions pursuant to § 1927 for counsel's failure to communicate "reasonably" with opposing counsel and *the Court* (a review of the case leaves no question as to what Judge Wood meant by her choice of the word "reasonably") regarding settlement. In *Deadwyler v. Wolkswagen of America, Inc.*, 134 F.R.D. 128, 140 (W.D.N.C. 1991), the

Court found that the failure to communicate *offers of settlement* is the epitome of "bad faith."

Finally, in *S & D Cal. Fruit Exchange, Inc. v. Gurino*, 783 F.2d 345, 345 (2d Cir. 1986), plaintiff's counsel, through his failure to confirm that the case had settled, allowed the case to proceed so far that the Second Circuit had already "commenced preparation of an order treating the merits of the appeal." Plaintiff's counsel also ignored repeated messages from defense counsel and the Court Clerk's staff about the status of settlement. When the Court asked him to show cause as to why he should not be sanctioned, counsel refused to even fall on the proverbial sword, instead going so far as to even blame the "inadequacy of telephone service to this Court's Clerk's office" for his failure to prevent the case from proceeding any further on appeal.

Here, Ms. Goodman merely overlooked the fact that the settlement had not been consummated; she did not arbitrarily impede the effectuation of settlement, as in *Forman*, fail to communicate an offer to settle to class plaintiffs, as in *Deadwyler*, or ignore the fact that the appellate court was still proceeding with the regular course of litigation, as in *Gurino*. Thus, none of these cases supports an award of sanctions under Section 1927.

Since the Court has found an absence of bad faith, the Court also finds no reason to use its inherent powers to impose sanctions as against Ms. Goodman. *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998) ("The key to unlocking a court's inherent power is a finding of bad faith."); *In re Mroz*, 65 F.3d 1567, 1575 (11th Cir. 1995) ("Invocation of a court's inherent power requires a finding of bad faith.") (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 49 (1991)). Accordingly, the Court **DENIES** Defendant's request for sanctions as against Ms. Goodman.

### 2. *Plaintiff Tommy Jackson*

Defendant also moves the Court to sanction Plaintiff as part of the Court's inherent power. Per Defendant, Plaintiff multiplied the proceedings by "steadfastly refusing to execute the Agreement despite agreeing to settle through the discussion on the record at his deposition, and his counsel's subsequent acceptance of the Agreement's terms." (Doc. 32 at 12.) Again, while the Court understands Defendant's dissatisfaction with the way in which this case was handled, the Court does not believe that an award of sanctions is warranted, even against Plaintiff.

The record reflects that Plaintiff may have fallen victim to a failure to understand the process of settlement. Although we lawyers might view Plaintiff's belief about the settlement—that the agreement on the record was only intended to satisfy his lawyer's fee so that he could be free to pursue his case with another lawyer—to be unreasonable, Plaintiff's view as a layman cannot be easily disregarded. There is no evidence to reflect that Plaintiff "acted in bad faith" or engaged in conduct "vexatiously, wantonly or for oppressive reasons." *See Chambers*, 501 U.S. at 45-46. The only evidence before the Court reflects that Plaintiff misunderstood the procedures for settlement. The Court also notes that Plaintiff's conduct partly appears more serious than it is in fact because of the aforementioned delay in completing and forwarding the final settlement documents. Without those facts, the Court is left with Plaintiff's confusion and misunderstanding. In this regard, the Court does not find that Plaintiff's misinterpretation of settlement, as misguided as it may have been, sufficient to invoke the Court's inherent powers to issue sanctions. Accordingly, Defendant's request for sanctions is **DENIED** as against Plaintiff.

Following entry of this Order, the parties shall immediately confer to coordinate the execution of the settlement agreement and exchange of the settlement consideration of $500.  The Court hereby **ORDERS** the Parties, Plaintiff Tommy Jackson, personally, and counsel for Defendant, to file the necessary dismissal document(s) not later than **Thursday, May 2, 2013**.  In the event that the Parties are unable to file said document(s) by that date, they shall instead file a written status report explaining why said documents have not been filed.  Plaintiff is further noticed that his failure to cooperate with Defendant regarding effectuation of settlement could result in the Court's imposition of monetary sanctions against Plaintiff.

**SO ORDERED**, this   10th   day of April, 2013.

                                               /s/     W. Louis Sands
                                             **THE HONORABLE W. LOUIS SANDS,**
                                             **UNITED STATES DISTRICT COURT**